JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JODI TEITELMAN, on behalf of herself and all others similarly situated

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
DeNittis, Osefchen Prince, P.C.
1515 Market Street, Suite 1200
Phila., PA 19102  Phone No: 1-215-564-1721

## DEFENDANTS

ESF, INC., ESF SUMMER CAMPS, INC. and MICHAEL D. ROUSE, each doing business as "ESF Summer Camps"

County of Residence of First Listed Defendant   Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question
(U.S. Government Not a Party)

☒ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Product Liability | |     28 USC 157 |     3729(a)) |
| ☐ 140 Negotiable Instrument |     Liability   ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &     Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|   & Enforcement of Judgment |     Slander     Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |     Liability   ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|     Student Loans | ☐ 340 Marine     Injury Product | |     New Drug Application | ☐ 470 Racketeer Influenced and |
|     (Excludes Veterans) | ☐ 345 Marine Product     Liability | | ☐ 840 Trademark |     Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |     Liability   **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
|     of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending |     Act | ☐ 862 Black Lung (923) |     Protection Act |
| ☒ 190 Other Contract |     Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal     Property Damage |     Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise |     Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) |     Exchange |
| | ☐ 362 Personal Injury -     Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| |     Medical Malpractice |     Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee |     Income Security Act |     or Defendant) |     Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/     Sentence | |     26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability |     Accommodations   ☐ 530 General | | |     Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** | |     Agency Decision |
| |     Employment   **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | |     State Statutes |
| |     Other   ☐ 550 Civil Rights |     Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| |   ☐ 560 Civil Detainee - | | | |
| |     Conditions of | | | |
| |     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
breach of contract class action for failure to give refunds for cancellation of kids summer camp

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
6,000,000.00

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
05/29/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 771 Panarama Road, Villanova PA 19085 _____

Address of Defendant: _____ 750 E. Haverford Road, Byrn Mawr, PA _____

Place of Accident, Incident or Transaction: _____ Pennsylvania _____

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/29/2020 _____ *Must sign here* _____ SD0016
_____    _____    _____
                           *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
   *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☑ 9. All other Diversity Cases
   *(Please specify):* _____ Class Action Fairness Act _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Stephen P. DeNittis, Esquire _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 05/29/2020 _____ *Sign here if applicable* _____ SD0016
_____    _____    _____
                           *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| JODI TEITELMAN, on behalf of herself all others similarly situated | : | CIVIL ACTION |
| v. | : | |
| ESF, INC, et al | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                          (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.           ( )


| | | |
|---|---|---|
| 05/29/2020 | Stephen P. DeNittis, Esquire | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 1-215-564-1721 | 1-856-797-9978 | sdenittis@denittislaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DITRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JODI TEITELMAN, on behalf of herself and all others similarly situated, <br><br>                 Plaintiff, <br><br>      v. <br><br> ESF, INC., ESF SUMMER CAMPS INC and MICHAEL D. ROUSE, each doing business as "ESF Summer Camps" <br><br>                 Defendants. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1.     This is a class action, brought on behalf of a class composed of parents who paid up to $6,000 per child to Defendants for their children to attend an ESF Summer Camp in Pennsylvania, New Jersey, New York, Maryland, and/or Connecticut during the 2020 summer session, seeking to compel Defendants to offer the option of a full refund for the fees paid for their children to attend ESF Summer Camps for the 2020 season.

2.     Defendants have unilaterally cancelled the ECF Summer Camps for the 2020 season, but are refusing to provide full refunds of the up to $6,000 in fees paid by class members so that their children could attend these camps and programs.

3.     Instead, Defendants have unilaterally decided to offer class members three "options:"

         a.) attendance at a purported "online" summer camp instead of an in-person camp as promised by Defendants at the time the fees were paid;

         b.) a promise of a credit for possible future attendance at Defendants' in-person summer camps in 2021 (if such camps are held in 2021 and Defendants are still in business at that time); or

1

        c) a 70% partial refund of the fees already paid for the child's in-
person attendance at the 2020 ESF Summer Camp to be paid by
Defendants in three installments---the last of which is not until May
<u>2021</u>---, with Defendants keeping the remaining 30%.

4.       No contract or other document executed by the class authorizes Defendants to

unilaterally keep 30% of the fees paid by class members or to limit the class to these three

"options."

5.       None of these "options" unilaterally selected by Defendants satisfies Defendants'

duties under law and equity under the circumstances.

6.       Nor are these three "options" adequate as a practical matter.

7.       It is unclear as to what an "online" summer camp even is. It apparently consists of

putting a child in front of a computer screen and having them watch videos; something which

class members can already due without paying Defendants upwards of $6,000. This "option" is

not an adequate substitute for the in-person summer camp promised by Defendants and for which

class members paid. Indeed, many class members have arranged their work schedules around the

fact that their child would be at the summer camp during daytime hours and chose the ESF

program specifically so they would be able to work during those hours.

8.       Nor is the promise of a future credit for attendance at an ESF Summer Camp in

2021 an adequate remedy. Class members paid for their child to attend an in-person summer

camp in 2020. There is no guarantee that Defendants will even be in operation in the summer of

2021, or that summer camps will be able to operate safely in 2021. Moreover, class members

may move to another area where there is no ESF Summer Camp in the intervening time and/or

the child may simply not want to attend a summer camp in 2021.

9.       Finally, the offer of a 70% percent partial refund of the  fees paid to attend an in-

person ESF Summer Camp in 2020 is wholly inadequate.  Even under Defendants' "offer," the

last of the three partial refund installments will not be paid until May of **2021.**

10.    There is no reason why Defendants should be allowed to keep 30% of the fees paid by the class when Defendants have not provided any of the promised services and no document signed by the class agreed to any such proposal.

11.    No one is blaming Defendants for refusing to put on their summer camps this year.

12.    Yet, as outlined in greater detail herein, the timing of Defendants' announcement of the cancelation announcement is problematic. Through March, April and most of May, Defendants ignored questions from class members in March, April and most of May as to whether the camps would take place as scheduled.

13.    Defendants clearly waited until after the time period when class members were contractually entitled to cancel their child's attendance and get a full refund (April 26, 2020) before first announcing the cancelation on May 21, 2020.

14.    Defendants have also been less than candid about the reasons for the cancelation.

15.    Defendants' May 21, 2020 cancelation claimed that the cancelation was mandated by CDC guidelines and state government, neither of which is true. Indeed, before Defendants announced the cancellation, the CDC had already issued guidelines allowing summer camps to open and state government had announced camps could go forward with basic precautions. Thus, Defendants, not the government, made the decision to cancel the 2020 camps.

16.    Most importantly, Defendants have not performed any part of their contractual promise and obligation: to provide an in-person summer camp experience to the children of class members. Put simply, Defendants did not provide 30% of the promised performance and so Defendants may not unilaterally decide to keep 30% of the unearned fees  which the class paid.

3

17.     Defendants has falsely stated it must retain 30% of the fees paid by the class to cover costs and expenditures despite receiving refunds from for space rented and layoffs of numerous employees.  Putting aside the fact that no class members ever executed any writing agreeing that ESF could retain 30% of the fees if ESF canceled the camps, ESF's costs incurred thus far in preparation for the 2020 camps is no where near $30 of the fees paid. Rather, Defendants are attempting to retain their "profit margin" without actually providing the promised camps.

18.     This action aims at requiring Defendants to offer, in addition to the "options" discussed above, a full refund of all fees and tuition paid for attendance at an in-person ESF Summer Camp during the 2020 season.

## JURISDICTION AND VENUE

19.     Jurisdiction over this matter in the United States District Court for the Eastern District of Pennsylvania is proper in that Plaintiff Jodi Teitelman is a Pennsylvania citizen, Defendants are Pennsylvania citizens, ESF Summer Caps have their headquarters in Bryn Mawr, Pennsylvania, the ESF Sumer Camps at issue were scheduled to be held in, inter alia, Pennsylvania,  and the total amount in controversy in this matter, including attorney's fees, is over $5 million.

## THE PARTIES

20.     Plaintiffs Jodi Teitelman is a citizen of Pennsylvania and resident of Villanova, Pennsylvania and is a victim of the actions alleged herein in that she paid $6701.55 for her two children to attend an in-person ESF Summer Camp in Pennsylvania in 2020 and she has now been told that the camp is canceled and she cannot get a full refund of those fees or even a partial refund unless Defendants are allowed to keep $2000 of her money and Defendants may wait

until May 31, 2021 to pay her even the $4700 partial refund.

21.     Defendant ESF Inc. is a Pennsylvania corporation with its headquarters and principle place of business located at 750 E. Haverford Road, Bryn Mawr, PA 19010, which along with the other Defendants conducts, operates, owns and holds itself to the world as "ESF Summer Camps."

22.     Defendant ESF Summer Camps Inc. is a Pennsylvania corporation with its headquarters and principle place of business located at 750 E. Haverford Road, Bryn Mawr, PA 19010, which along with the other Defendants conducts, operates, owns and holds itself to the world as "ESF Summer Camps."

23.     Defendant Michael D. Rouse is a Pennsylvania citizen who is the founder, owner, principal, executive director and "public face" of ESF Sumer Camps. At all times relevant hereto, Mr. Rouse personally participated in the conduct alleged herein, including personally making the decision to withhold 30% of the fees paid by the class for in-person summer camp services which Defendants are wholly unable to deliver. In taking this action, Mr. Rouse sought, not only to benefit the other Defendants, but also himself in that a portion of the up to $2000 being withheld from each class member for the canceled programs are being paid to Mr. Rouse personally and are held by him personally.

24.     Moreover, Defendants ESF Inc and ESF Summer Camps Inc. are the alter egos of Defendant Rouse in that Rouse, without respect to corporate forms, uses these purported legal entities as an extension of his person, with him personally directing and operating ESF Summer Camps. Specifically, Defendant Rouse completely dominates and exercises a unity of control over ESF Summer Camps, making all core decisions personally. This includes the decision not to offer full refunds to the class, which Rouse personally announced in a video he posted on

YouTube entitled a "Message from Michael,"  as depicted in Graphic A below:



### FACTS WHICH GIVE RISE TO THE CLASS CLAIMS

25.    ESF's own website refers to itself as having set **"the national camp gold standard for the past 38 years."**

26.    Hyperbole aside, ESF Summer Camps are among the most sought- after summer camps in this section of the United States. Based in the Main Line, ESF Summer Camps boast day camp locations at prestigious places like the Haverford School, Greenwich Academy in Connecticut, and the Lawrenceville boarding school just outside of Princeton, among other posh spots where the kids learn to fence, brush up on their tennis and squash games, fly drones, and build robots.

27.    As one might expect from an organization that calls itself the **"gold standard"** of summer camps, ESF Summer Camps are not cheap. Depending on the programs or "camps"

selected, a parent can pay up to $6,000 for one child.

28.     On January 29, 2020, Plaintiff enrolled her two children to attend one of Defendants' camps which was scheduled to be conducted at Defendants' camp located at the Haverford School in Pennsylvania.

29.     Plaintiff paid $6,700 in installment payments for her two children with the expectation to pay an additional final payment before the start date for the camp.

30.     Pursuant to Defendants' written representations to Plaintiff and other class members, parents had until April 1, 2020 to cancel their enrollment at Defendants' camps to entitle them to a full refund.  This representation was set forth in numerous written communications issued by Defendants known as "Ease of Mind."

31.     In an effort to prevent mass cancelations due to Covid 19 concerns, Defendants later extended that deadline to April 26, 2020.

32.     As one might expect, throughout March and April, class members bombarded ESF with requests for information as to whether the ESF summer camps would proceed as scheduled or whether they would be cancelled.

33.     However, ESF refused to state that cancellation would occur until May 21, 2020, after the deadline for parents to cancel and get a full refund had passed.

34.     On May 21, 2020 ESF co-founder and executive director Michael Rouse used a YouTube video entitled a **"A Message from Michael"** to announce that there would be no on-site ESF summer camps for the summer of 2020.

35. Mr. Rouses' announcement was followed by an email notice, which stated in relevant part  that Defendants had unilaterally cancelled the ESF Summer Camps for the 2020 season, but were refusing to provide full refunds of the fees paid by class members so that their children

could attend these camps and programs in 2020. <u>See</u> Attachment A.

36. Defendants' May 2, 2020 cancelation email claimed that the cancelation of the 2020 ESF Summer Camps was mandated by CDC guidelines and the government, making it appear as if Defendants had no choice but to cancel. <u>Id</u>.

37. But the statements in ESF's May 21, 2020 notice to parents regarding the CDC guidelines and the government requiring the closure of all summer camps were not accurate.

38. Indeed, on May18, 2020---before Defendants even announced the cancellation of the camps for 2020---the CDC actually issued guidelines allowing summer camps to open and a set of safety procedures designed to protect campers. Governor Wolfe's administration had also announced that summer camps could open.

39. Thus, Defendants made the decision to cancel the camps for 2020, not the government.

40. Instead of offering full refunds to class members for the canceled programs, Defendants have unilaterally decided to offer class members three "options":

      a.) attendance at a purported "online" summer camp instead of an in-person camp as promised by Defendants at the time the fees were paid;

      b.) a promise of a credit for possible future attendance at Defendants' in-person summer camps in 2021 (if such camps are held in 2021 and Defendants are still in business at that time); or

      c.) a 70% partial refund of the up to $6700 fees paid for the child's in-person attendance at the 2020 ESF Summer Camp, which Defendants would pay in three installments---the last of which is not until May 2021---, with Defendants keeping the remaining 30%.

41. None of the three "options" unilaterally selected by Defendants satisfies Defendants' duties under law and equity under the circumstances.

42. The class members did not execute any contract or other writing in which they agreed to give Defendants the authority to keep up to 30% of the fees paid by the class if Defendants canceled the ESF Summer Camps and/or where unable to provide the promised performance.

43. Nor is 30% of the fees paid by the class per child a reasonable estimate of the actual costs and expenses expended thus far by Defendants in preparing for the 2020 summer camps.

44. Indeed, the largest expense of Defendants in operating the summer camps is the salary and wages paid to camp counselors and staff; costs which will not be paid this year due to Defendant's cancelation of the 2020 camps.

45. Thus, 30% of the fees paid---or up to $2000 per class member or more--- is not a reasonable estimate of any amounts which Defendants have expended thus far in an attempt perform. Rather, upon information ad belief, Defendants are attempting to deduct their profit margin from the fees paid by the class without actually performing any of the promised services.

46. Nor are the three "options" Defendants have unilaterally offered to the class acceptable as a practical matter.

47. It is unclear as to what an "online" summer camp even is. It apparently consists of putting a child in front of a computer screen and having them watch videos; something which class members can already due without paying Defendants upwards of $6,000.

48. This "option" is not an adequate substitute for the in-person summer camp promised by Defendants and for which class members paid. Indeed, many class members have arranged their work schedules around the fact that their child would be at the summer camp during daytime hours and chose the program specifically so they would be able to work during those hours.

49. Nor is the promise of a future credit for attendance at an ESF Summer Camp which might be held in 2021 an adequate remedy. Class members paid for their child to attend an in-person summer camp in 2020. There is no guarantee that Defendants will even be in operation in the summer of 2021, or that summer camps will be able to operate safely in 2021. Moreover, class members may move to another area where there is no ESF Summer Camp in the intervening time and/or the child may simply not want to attend a summer camp in 2021.

50. Finally, the offer of a 70% percent partial refund of the fees paid to attend an in-person ESF Summer Camp in 2020 is wholly inadequate.

51. Even under Defendants' "offer," the last of the three partial refund installments will not be paid until May of 2021.

52. More importantly, there is no reason why Defendants should be allowed to keep 30% of the fees paid by the class when Defendants have not provided any of the promised services.

53. No contract or other document executed by the class allows Defendants to keep 30% of the fees paid if Defendants are unable to perform the services promised and/or Defendant cancel the summer camps.

54. Rather, the sole provision in any document presented to the class by Defendants which even mentions refunds is a statement that if the parent cancels their child's attendance, Defendants may deduct $150 from the fees refunded (the so-called "Ease of Mind" policy). No provision of any documents executed by, or presented to, the class describes what happens if Defendants cancel the summer camps, let alone gives Defendants the power to keep 30% of the fees paid by a class member.

55. No one is blaming Defendants for canceling their summer camps this year, but the timing of Defendants' notice of cancellation was highly problematic. Defendants

clearly waited until May 2, 2020 to notify class members of their decision to not have in person camps in 2020, after ignoring class member requests during March, April and most of May for information about whether the camps would take place or be canceled.

56. This was clearly done so that class members could not exercise their right to cancel their child's attendance and receive a full refund of monies paid, as promised in writing in Defendants' written "Ease of Mind" policy.

57. Moreover, the simple fact is that Defendants have not performed any part of their contractual promise and obligation to provide an in-person summer camp experience to the children of class members.

58. Put simply, Defendants did not provide 30% of the promised performance and so Defendants may not unilaterally decide to keep 30% of the unearned fees and tuition---ie consideration--- which the class paid.

31. The basic theory of this case is that, under contract law, equitable principles and statutory authority, Defendants are not permitted to keep $30% of the fees paid by the class under the existent circumstances and Defendants must offer class members the option of a full refund.

## CLASS ACTION ALLEGATIONS

59.    Plaintiff brings this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf of herself and all members of the following proposed class:

> **All persons who paid fees for their child to attend a ESF Summer Camp in Pennsylvania, New Jersey, New York, Maryland, or Connecticut during the 2020 season.**

60. Plaintiff brings this action as a sub-class pursuant to Fed.R.Civ.P. 23, on behalf of herself and all members of the following proposed class:

11

**All persons who paid fees for their child to attend a ESF Summer Camp in Pennsylvania during the 2020 season.**

61.     The class and sub-class so numerous that joinder of all members is impracticable.

62.     The exact number and identities of the persons who fit within each proposed class are contained in Defendants' records and can be easily ascertained from those records.

63.     The proposed class consists of persons who were billed by Defendants and thus Defendants know the name and address of each class member and the amounts of fees they have paid.

64.     At present, is appears that proposed class is composed of at least 5000 persons and the proposed sub-class is composed of at least 2000 persons.

65.     Common questions of law and fact exist as to each class member.

66.     All claims in this action arise exclusively from uniform policies, procedures and common course of conduct of Defendants as outlined herein.

67.     No claims alleged in this complaint are based on any individualized oral communications or individualized interaction of any kind between class members and Defendants or anyone else.

68.     There are common questions of law and fact affecting the rights of the class members, including, inter alia, the following:

   a.   whether the class is legally and/or equitably entitled to an offer of a full refund for fees paid for their children to attend an ESF Summer Camp in 2020;

   b.   whether Defendants are entitled to keep 30% of the fees paid by the class to Defendants for attendance at an ESF Summer Camp in 2020;

   c.   whether a contract exists between each class member and Defendants and the terms of that contract;

   d.   what portion of the fess paid by the class to Defendants for an ESF Summer

12

Camp program in 2020 must be refunded to the class; and

e. what, if any, portion of those fees paid may Defendants legally and/or equitably retain after Defendants canceled the scheduled programs.

69. The laws of contract and/or the principles of unjust enrichments and restitution which apply in Pennsylvania, New Jersey, New York, Maryland, and Connecticut are sufficiently similar to permit a class to be certified composed of residents of all such states.

70. Specifically, the law of contracts in each of these states would not allow Defendants to unilaterally cancel its entire performance and then allow Defendants to unilaterally decide to keep 30% of the fees paid by the class, without some type of writing executed by the class agreeing to such terms.

71. Nor would the equitable or quasi-contract principles of any of these states allow Defendants to retain 30% of the fees paid by the class as a reasonable estimate of the amounts Defendants expended in the attempted performance of the promised services.

72. Plaintiff is a member of the class she seeks to represent.

73. The claims of Plaintiff are not only typical of all class members, they are identical.

74. All claims of Plaintiffs and the class arise from the same course of conduct, policy and common course of action by Defendants as outlined herein.

75. All claims of Plaintiff and the class are based on the exact same legal theories.

76. Plaintiff seek the same relief for herself as for every other class member.

77. Plaintiff has no interest antagonistic to or in conflict with the class.

78. Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent herself and the class.

13

79.     Defendants have acted and/or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

80.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would confront Defendants with incompatible standards of conduct.

81.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, inter alia, the damages suffered by each class member are too low to make individual lawsuits economically feasible.

82.     Common questions will predominate, and there will be no unusual manageability issues.

**COUNT I**

**COMMON LAW CONTRACT**

83.     Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

84.     By the facts alleged herein, a contract existed between Defendants and each class member under which Defendants would provide the promised in-person summer camp experience to the class member's child in 2020 and the class member would pay the fees demanded by Defendants for that service.

85.     No writing or agreement of any kind executed by any class member authorized Defendants to retain 30% of the fees paid by the class for such services if Defendants canceled the 2020 programs and/or Defendants were unable to perform those services.

86.     Nor did any writing or agreement of any kind executed by any class member authorize Defendants modify the terms of the contract described above, or to cancel Defendants'

performance and still retain any portion of the consideration paid by the class; let alone 30% of that consideration.

87.     By canceling their own performance, while attempting to retain 30% of the consideration by the class, Defendants have breached the contract between Defendants and each class member and Plaintiff and the class have suffered damages as a result of that breach.

## COUNT II

### ALTERNATIVE EQUITABLE CLAIM FOR UNJUST ENRICHMENT OR DISGORGMENT

88.     Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

89.     Plaintiff brings, as an alternative theory of recovery, a claim for refunds on behalf of herself and the class under a theory of unjust enrichment and/or disgorgement.

90.     By the acts alleged herein, Defendants each received a benefit from Plaintiff and the class in the form of monies paid by Plaintiffs and the class to Defendants for services which Defendants never performed.

91.     The retention of that benefit by Defendants would be unjust.

92.     By the facts alleged herein, equity demands that Defendants disgorge themselves of this benefit and return said benefit to Plaintiff and the class.

## COUNT III

### Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 Pa. Cons.St. § 201–1 et seq

### On Behalf of the Pennsylvania Sub-Class Only

93.     Plaintiff incorporates all preceding paragraphs of this complaint as if set forth

fully herein.

94. This action does not raise any claims of common law fraud.

95. Rather, the claims in this count arise exclusively against Defendant under the UTPCPL.

96. **"The purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices."** Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 646 (Pa.Super.1999).

97. It is well-established that, in order to carry out that purpose, the UTPCPL must be liberally construed. See Chiles v. Ameriquest Mortg. Co., 551 F.Supp.2d 393, 398 (E.D.Pa.2008)**("The UTPCPL must be construed liberally.")**; Pirozzi v. Penske Olds-Cadillac-GMC, Inc., 413 Pa.Super. 308, 605 A.2d 373, 376, appeal denied, 532 Pa. 665, 616 A.2d 985 (1992)**("our supreme court held that the UTPCPL is to be liberally construed in order to effect its purpose.")**

98. In order to prevail under the UTPCPL, a plaintiff must prove the transaction between plaintiff and defendant constituted "trade or commerce" within the meaning of the UTPCPL and that the defendant was engaged in unfair or deceptive acts or practices.

99. The conduct alleged herein took place during "trade and commerce" within the meaning of the UTPCPL.

100.    The conduct alleged herein whereby Defendants are attempting to cancel 100% of their own  performance while retaining 30% of the fees paid by Plaintiff and the class constitutes a deceptive practice, as does Defendants attempt to stretch out the payment of even partial refunds until May of 2021.

101.    The UTPCPL 73 P.S. § 201-2(4)(xxi) defines unfair or deceptive acts or practices, inter alia, as any: **"deceptive conduct which creates a likelihood of confusion or misunderstanding."**

102.    Prior to 1996, 73 P.S. § 201-2(4)(xxi) required that a defendant engage in the equivalent of common law fraud. See Flores v. Shapiro & Kreisman, 246 F.Supp.2d 427, 432 (E.D.Pa.2002); Commonwealth of Pa. v. Percudani, 825 A.2d 743, 746-47 (Pa.Commw.2003).

103.    In 1996, however, UTPCPL 73 P.S. § 201-2(4)(xxi) was amended to add the word "deceptive conduct" as an alternative to "fraud" in describing the practices prohibited by this section. Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145 (Pa.Super.2012) (holding that  the amendment to the catch-all provision that added the language "or deceptive conduct" changed the requirement from proving actual fraud to merely proving deceptive conduct); Commonwealth of Pa. v. Percudani, 825 A.2d 743, 746-47 (Pa.Commw.2003) (a plaintiff who alleges deceptive conduct to proceed without proving all of the elements of common law fraud); Flores v. Shapiro & Kreisman, 246 F.Supp.2d 427, 432 (E.D.Pa.2002):

> **"by adding a prohibition on 'deceptive' conduct, the 1996 amendment to the CPL eliminated the need to plead all of the elements of common law fraud in actions under the CPL. Under general principles of statutory interpretation, no word should be rendered redundant. The new word 'deceptive' in the statute, therefore, must have been intended to cover conduct other than fraud."**

104.    As alleged herein, Defendants have engaged in deceptive conduct which creates a likelihood of confusion or misunderstanding.

105.    Such conduct includes representing to class members that they only have the three "options" which Defendants have unilaterally decided to "impose" on the class and misrepresenting to the class that they have no right to a full refund.

17

106.    It also includes Defendants' misrepresentation to the class that 30% of the tuition paid by class members ---or up to $2000 per person or more---represents a fair and reasonable estimate of the costs expended by Defendants thus far attempting to carry out the planned 2020 summer camp programs. In actuality, Defendants' actual costs to date are no where near that amount, in that Defendants will no longer have to pay camp counselors and staff for the 2020 season or the full rents to the various facilities where the camps were to be held.

107.    Moreover, under the documents which Defendants submitted to each class member, each class member was told in writing that the class member may cancel their child's camp attendance up to April 1, 2020---later extended to April 26, 2020--- and Defendants would refund all fees paid minus $150.  Throughout March, April and most of May, class members have been bombarding Defendants with questions as to whether the camps would take place or be canceled. Yet, Defendants refused to announce the cancelation until after the deadline for class members to obtain a full refund under Defendants' "Ease of Mond" documents had passed.

108.    Finally, the reasons given by Defendants in the May 21, 2020 cancelation announcement were misleading. Defendants' cancelation notice indicates that the cancelation was due to CDC guidelines and government closure orders. In actuality, before May 21, 2020 both the CDC and state governments had made clear that summer camps could be held is basic precautions were followed. Thus, contrary to what Defendants stated to class members, it was Defendants and not the government that canceled the ESF Summer Camps.

109.    While actual reliance is not an element of the UTPCPL claim alleged herein, it is clear that in the case at bar, reliance may be presumed from the circumstances. The entire purpose of class members paying any fees to Defendants was for their children to attend the 2020 ESF in-person Summer Camps. Clearly, if parents had known that these camps would not take

place, or that they would be canceled by Defendants without a refund, no class member would have paid any fees to Defendants. Moreover, if class members had been told about the planned cancelation before April 26, 2020, they would have been entitled to a full refund (as promised in Defendants' written "Ease of Mind" cancelation policy).

110.    As a proximate result of this conduct, plaintiffs and the class have suffered an ascertainable loss of money and property

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court to:

    a.  Certify the case as a class action pursuant to Fed.R.Civ.P. 23;

    b.  Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

    c.  Award Plaintiff and the class members treble damages;

    d.  Award Plaintiff reasonable attorneys' fees and costs; and

    e.  Grant such other and further legal and equitable relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

PLEASE TAKE NOTICE that the Plaintiff hereby demands a trial by jury as to all parties.

Dated:  May 29, 2020          DeNITTIS OSEFCHEN PRINCE, P.C.

BY: _____

        STEPHEN P. DENITTIS, ESQ. (SD-0016)
        SHANE T. PRINCE, ESQ. (SP-0947)
        DeNittis Osefchen Prince, P.C.
        1515 Market Street, Suite 1200
        Philadelphia, PA 19102

Phone No:  1-215-564-1721
Email:  sdenittis@denittislaw.com
        sprince@denittislaw.com

*Attorneys for Plaintiff*

# Exhibit A

-----Original Message-----
From: ESF Camps and Experiences <noreply@active.com>
To:
Sent: Fri, May 22, 2020 3:53 pm
Subject: Learn About Your Options for Summer 2020



Dear ESF Family,

We hope this email finds you, your family and your loved ones healthy and safe. We also want to thank you, our camp families, for all the support, understanding and patience that you have shown us regarding COVID-19 and our summer plans. We have been overwhelmed by the outpouring of love and support we have received from you. The number of families who have simply called to connect and check on our counselors, coaches, directors and staff make us so proud to serve our ESF families year after year. We can't thank you enough.

We recognize and appreciate the importance of camp for so many families and we've been working tirelessly, planning, strategizing and implementing protocols so that we could open camp as a safe environment under multiple scenarios. In speaking with our families, there are a large percentage who want camp to run for their children's physical, social and emotional well-being. We have spent time carefully considering how we might re-imagine camp in 2020, developing plans to run safe and adaptive programs for at least some portion of the summer. We have also heard from parents who are unsure about the summer and some who do not want their children to attend camp due to the latest COVID-19 news reports. **We recognize that all families are looking for a definitive decision about the 2020 camp season and for that we have relied on many health experts for guidance in how to best move forward.**

## 2020 Summer Update

We have carefully reviewed the latest CDC and American Camp Association (ACA) health & safety guidelines and consulted with industry experts and our camp physician. **In light of CDC/ACA guidelines released on May 15th, state emergency orders, state reopening plans, social distancing guidelines, and our desire to provide a safe, healthy, and an exceptional experience for every camper, we have decided with great sadness and heavy hearts that there is no way to provide an on-site camp experience aligned with our incredibly high standards. Therefore, we will not be able to hold in person ESF Camps this summer at The Haverford School.**

This is a first in our 38-year history and, like many of you, we are grieving the loss of camp in 2020 and acknowledge that this is hard for everyone. This news is simply devastating; mostly for our campers and staff who have been anxiously waiting all year to experience camp for the first time, or those who have been counting down the days until they are reunited with their best friends at our traditional morning assembly. We simply cannot imagine ESF without our campers and staff linking arms together swaying to the latest song as one community. We never in a million years thought that we would be missing a

summer with you. We wish that we could be calling you all individually or seeing you all in person to share this news and to help our campers deal with this upsetting and disappointing reality. We also wish we could give them a hug, a pat on the back, a high five or just sit with them to answer their questions.

We value tremendously the trust you have placed in us and our decision was dictated by a deep sense of responsibility. It's the most difficult decision we've had to make as an organization and the idea of upsetting our camp family has been heart-wrenching. As the gold standard of camps, we believe that your child's safety and their experience at camp are more important than our bottom line. **As in all trying times, we at ESF turn to the core principles we strive to instill in our campers every summer: resilience, gratitude, respect and hope. There is no greater moment to have faith in our special camp community than right now.**

**While we know conversations with your campers will be difficult as they navigate their loss of the traditional ESF camp they were looking forward to, we would not be who we are today if we didn't always stick to our guiding principle: the safety of our campers comes first.**

With your trust and patience, we have developed a plan of how we can move forward together, which includes several options for you in lieu of in-person camp:

**Option 1: ESF 365 Online Adventures + 1 for 1 Life Experiences + 20% credit and Summer 2021 Priority:** We have prepared a one of kind multi-dimensional online summer adventure that includes unique interactive opportunities to extend your family's summer fun by discovering ESF's most in-person memorable events on weekends, holidays and school vacation days with our amazing 1 for 1 LIVE Experiences that are offered throughout the year.

**Option 2: Credit for 2021 Camp + 20%:** Your 2020 payment can automatically roll over to 2021 and get a bonus credit.

**Option 3: Special Family Considerations:** We also understand that some families are experiencing severe financial and health hardships arising from this extraordinary situation, and we want to help. We have introduced a third option that we will set up as a refund plan for you.

As a small business, **we would ask that you strongly consider the first two options** and remember that ESF's historical policy was to offer refunds (less service fees) to parents by April 1. Our Ease of Mind policy announced on March 24, 2020 extended a family's ability to request credit toward next year beyond May 1. We honored all refunds requested by April 1 again this year.

## Next Steps and Deadline

Due to COVID-19, we, like so many, are in a challenging position we've never experienced before, since our inception in 1982. As you might expect, planning and preparing for the camp season is a year-round business operation. As a small business, we incur expenses throughout all four seasons to develop curriculum, recruit the best talent to instruct your kids in the summer, train our staff, process enrollments, purchase supplies, make capital improvements to our camp facilities, provide world class customer service, all of which are funded by camp tuition.

**We acknowledge that now more than ever, every family has different needs. That's why, after listening closely to valuable family feedback, we arrived at these outlined options and kindly request that you complete your Summer 2020 Selection form to guide us with your choice by midnight on Thursday, May 28th.**

## STEP 1: LEARN MORE ABOUT ALL THREE OPTIONS IN DETAIL

**THREE OPTIONS FOR YOU**

## STEP 2: CLICK BELOW TO MAKE YOUR SELECTION

**2020 ESF SUMMER SELECTION**

It's difficult to put into words the emotions we're feeling right now and will continue to feel all summer. We know your children will be experiencing similar feelings and hope to stay connected throughout the summer and beyond with our new ESF 365 program we've designed for your child. Thank you for your patience, understanding, and your ongoing support during this unprecedented time in our history.

From our family to yours,

Michael J. Rouse
Executive Director and Co-Founder

Watch Michael's May 21st video message.

This email was sent to jayredt3@aol.com by ESF Camps and Experiences
750 E. Haverford Road, Bryn Mawr, PA, 19010-3816 United States
To stop receiving these emails, unsubscribe here

